DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

CHOICE HOTELS INTERNATIONAL, INC.,   )
                             )
         **Plaintiff,**          )
      **v.**                     )
                             )    **Civil Action No. 2013-MC-0023**
SPECIAL SPACES, INC., GUSTAV JAMES,   )
OTTO JAMES, AND ARTHUR PETERSEN,   )
                             )
        **Defendants.**       )
_____)

**Attorneys:**
**Andrew C. Simpson, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Ronald E. Russell, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on "Defendants' Appeal From Magistrate Order[,] Motion For A Protective Order[,] And Request For Due Process Hearing" ("Appeal") (Dkt. No. 19), and Plaintiff's "Motion For Discovery Sanction For Failure To Attend Depositions" (Dkt. No. 22), both of which have been fully briefed. (*See* Dkt. Nos. 20, 21, 23, 24). For the reasons that follow, the Court will affirm the Magistrate Judge's ruling, reject Defendants' arguments, and grant in part Plaintiff's Motion for Discovery Sanctions.

## I.     BACKGROUND

In 2005, Defendants Special Spaces, Inc., Gustav James, Otto James, and Arthur Petersen ("Defendants") entered into a franchise agreement with Plaintiff Choice Hotels ("Plaintiff") to construct and operate a Comfort Inn & Suites in St. Croix, Virgin Islands. *Choice Hotels Int'l, Inc.*

*v. Special Spaces, Inc.*, 2012 WL 5267455, at *1 (D. Md. Oct. 24, 2012). The hotel was never

constructed, and Plaintiff filed a Demand for Arbitration with the American Arbitration

Association, which issued an award in favor of Plaintiff in the amount of $180,000, plus half the

fees and expenses of the arbitration ($3,375). *Id.* Plaintiff then filed an "Application to Confirm

Arbitration Award" in the United States District Court for the District of Maryland (the "rendering

court"). *Id.* The rendering court granted summary judgment in favor of Plaintiff, concluding that:

> [t]here [was] no genuine dispute of material fact as to the validity or propriety of
> the arbitrator's award. Defendants' theory that Choice Hotels violated its duty of
> good faith and fair dealing is unsupported by any citation in the record. The
> $180,000.00 amount awarded by the arbitrator clearly tracks the calculation
> provided in the Agreement. With respect to Defendants' claim that they were
> excluded from participating in the arbitration hearing, the record indicates the exact
> opposite—Defendants did not appear or communicate with the arbitrator regarding
> their participation. Moreover, even if Defendants' claim is true, nothing in the
> record supports their allegation that they were *improperly or unfairly* prevented
> from participating in the hearing. According to their own pleading, Defendants
> wanted to participate telephonically, and the arbitrator declined to entertain this
> request. This conduct does not justify vacating or modifying the arbitrator's award.

*Id.* at *2 (emphasis in original). The rendering court subsequently issued an order denying

Defendants' motion to set aside the judgment, concluding that Defendants had not provided a basis

for vacating the award. (Dkt. No. 17-3).[1]

Plaintiff sought to register the rendering court's judgment in this Court by filing a "Clerk's

Certification Of A Judgment To Be Registered In Another District" and "Final Order Of

Judgment." (Dkt. Nos. 1-1, 1-2). Defendants responded with a "Notice of Objection," in which

---

[1] The rendering court stated:

> Defendants have re-filed their motions and ask the Court to set aside the judgment.
> The Court declines to do so for the reasons stated in its Memorandum Opinion and
> in Choice Hotels' omnibus response to Defendants' motions.

(Dkt. No. 17-3).

they stated that they "were denied due process, an opportunity to be heard and completely left out of the process that led to a Judgment." (Dkt. No. 2 at 1).

Plaintiff subsequently filed notices to take depositions of Defendants Gustav James, Otto James, and Arthur Peterson. (Dkt. Nos. 10, 11, 12). Defendants responded with a "Motion to Quash Amended Notice of Judgment Debtor Depositions" ("Motion to Quash") (Dkt. No. 14), in which they sought to block the depositions and relitigate the judgment of the rendering court. Defendants argued that: 1) the rendering court "has never given defendants a chance at even presenting their opposition to the entire process"; 2) because "the subject matter of this litigation at issue involves real property[, s]uch important decisions should be decided at a proper hearing before this court with all parties having a right to be heard, present their defenses and claims and given proper due process[;]" and 3) compliance with the depositions would amount to an "undue burden." (Dkt. No. 14 at 1-3). Plaintiff opposed on the grounds that: 1) the rendering court had already denied Defendants' motions to set aside the judgment; 2) Defendants had an opportunity to defend themselves in the underlying arbitration proceedings but chose not to do so; 3) the rendering court's denial of Defendants' preference to conduct the arbitration proceedings by telephone did not amount to a denial of due process; and 4) Defendants failed to demonstrate that their participation in judgment-debtor depositions would subject them to an "undue burden." (Dkt. No. 17 at 3-5).

Magistrate Judge Ruth Miller denied the motion to quash. (Dkt. No. 18). Specifically, Judge Miller noted that Defendants had failed to appeal the Maryland judgment to the Fourth Circuit, and concluded that Defendants were not permitted to attack the merits of the underlying Maryland judgment in this Court. *Id.* at 1. As to the depositions themselves, Judge Miller explained

that they were not overbroad and that the only constraint upon Plaintiff was that any questions asked must be related to collection of the rendering court's judgment:

> Plaintiff seeks discovery in the form of deposition testimony and the production of various documents. Upon review of the notices, the Court finds that they are calculated to assist in collecting on the judgment, and are reasonable in length (four years at most). Plaintiff is not entitled, however, to documents having no bearing on personal or real property assets belonging to defendants, such as defendant's birth certificate or driver's license or professional licenses.

(Dkt. No. 18 at 3).

At 7:51 a.m. on the morning of the depositions—39 minutes before Defendant James was scheduled to be deposed—Defendants filed their Appeal of the Magistrate Judge's ruling, in which they: 1) challenge Judge Miller's ruling; 2) move for a protective order; and 3) request a "due process hearing." (Dkt. No. 19). In their Appeal, Defendants first argue that Virgin Islands law does not permit recognition of the rendering court's judgment. Defendants contend that Plaintiff was obligated under Virgin Islands law to initiate a new action in order to collect on the judgment and that, in any event, the rendering court's judgment should not be honored because of the arbitrator's refusal to allow Defendants to participate in the arbitration proceedings telephonically. (Dkt. No. 19 at 3). Defendants also raise varying versions of the same arguments raised in their Motion to Quash: 1) that the arbitration forum was inconvenient to them and they were not given enough time to travel to, or prepare for, the hearing; 2) that they were never given an opportunity to present their claim on the merits; 3) that a Maryland court could not exercise its jurisdiction over a claim concerning real property in the Virgin Islands; and 4) that the rendering court's judgment is inconsistent with the Virgin Islands' strong public policy favoring arbitration. *Id.* at 4-7.

Approximately one hour after the Appeal was filed, Defendant Gustav James appeared with his counsel, Ronald Russell, Esq., for the scheduled deposition, but refused to participate in

the deposition. (Dkt. No. 22-1). Andrew Simpson, Esq., counsel for Plaintiff, explained that filing

the appeal did not stay the case and that the deposition should proceed. (Dkt. No. 22 at 2). When

Simpson suggested to Russell that they call Judge Miller to resolve the parties' disagreement as to

whether the depositions should proceed, James and Attorney Russell left the deposition. The

dialogue from that exchange reads as follows:

> MR. SIMPSON (Counsel for Plaintiff): Why don't we get Magistrate Miller on the phone?
>
> MR. RUSSELL (Counsel for Defendant): Well, I don't want to deal with Magistrate Miller. I appealing her. Why should I listen to Magistrate Miller now? She's the one that rule against us. We need to get a District Court Judge.
>
> MR. SIMPSON: So are you saying if we got Magistrate Miller on the phone and she told you to go forward with the depositions, you wouldn't do it?
>
> MR. RUSSELL: I don't want to get Magistrate Miller on the phone.
>
> MR. SIMPSON: I understand you don't want to, because you don't want to hear her say that you don't have a protective order. You need to go forward with the deposition. My question is, if I get Magistrate Miller on the phone and she tells you you need to go forward, are you going to refuse?
>
> MR. RUSSELL: Your question—I'm not going to answer your question.
>
> MR. SIMPSON: Okay. I'm going to get Magistrate Miller on the phone.
>
> MR. RUSSELL: We're leaving.
>
> MR. SIMPSON: If you're leaving, that's fine, but I'm going to get Magistrate Miller on the phone.
>
> MR. RUSSELL: And we're not going forward. So whatever the Court issues in the protective order, we'll proceed with that. Because we believe this process is completely flawed. And to participate in it severely prejudices my clients.
>
> MR. SIMPSON: Just for the record, that was Gustav James?
>
> MR. RUSSELL: Yes.
>
> MR. SIMPSON: For the record, Gustav James and Attorney Russell have left the deposition.

(Dkt. No. 22-1 at 7-8). Defendant Otto James and Defendant Arthur Patterson were scheduled to have their depositions taken on the same day at 10:00 a.m. and 11:30 a.m., respectively, but neither of them appeared. (Dkt. No. 22 at 4).

Plaintiff argues that Defendants' failure to proceed with the noticed depositions warrant sanctions under Fed. R. Civ. P. 37. Specifically, Plaintiff seeks a court order deeming it established that Defendants do not have sufficient personal property to satisfy the Maryland judgment, together with an award of costs and attorneys' fees associated with Defendants' failure to appear for the depositions and the preparation of the instant motion for sanctions. (Dkt. No. 22 at 4). Defendants oppose on the grounds that their attorney "attended the deposition and made a verbatim record regarding the objections[, which] does not constitute disobedience of the process but, rather [] a diligent effort to protect his clients from the undue burden of a process that was objectionable." (Dkt. No. 23 at 2). Defendants also appear to argue that the Appeal should have operated as a stay of the depositions. (Dkt. No. 23).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Standard of Review

A party may challenge a magistrate judge's non-dispositive order—such as the one at issue here—by timely appealing to a district judge. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LRCi 72.2. "The district judge in the case must ... modify or set aside any part of the order that is 'clearly erroneous or is contrary to law.' " *McCann v. Kennedy Univ. Hosp., Inc.,* 596 Fed. App'x 140, 146 (3d Cir. 2014) (quoting Fed. R. Civ. P. 72(a)); *Weiss v. MacCaferri, Inc.,* 2015 WL 5173643, at *1 (D.V.I. Sept. 2, 2015) ("[T]he proper standard of review for discovery orders is the clearly erroneous or contrary to law standard.") (internal citations omitted).

Under the clearly erroneous standard, "a reviewing court can upset a [magistrate's] finding of fact[,] ... but only if the court has the definite and firm conviction that a mistake has been committed." *Id.* This means that "'[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Williams v. Cost–U–Less, Inc.,* 2014 WL 2993667, at *3 (D.V.I. July 3, 2014) (quoting *United States v. O'Malley,* 495 Fed. App'x 239, 242 (3d Cir. 2012)). "[A] Magistrate Judge's ruling is contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law." *Kendricks v. Hertz Corp.,* 2008 WL 3914135, at *2 (D.V.I. Aug. 18, 2008) (internal quotation and citation omitted). "The party who filed the appeal bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law." *Control Screening, LLC v. Integrated Trade Sys., Inc.,* 2011 WL 3417147, at *6 (D.N.J. Aug. 3, 2011).

### B. Other Legal Principles

#### 1. Registration of Foreign Judgment

The procedure for registering a foreign federal judgment is governed by 28 U.S.C. §1963 ("Section 1963"). A plaintiff proceeding under Section 1963 may register a foreign federal judgment by transmitting the certified judgment from a rendering court to the clerk of the registering court without initiating a separate lawsuit. Specifically, Section 1963 provides:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district …when the judgment has become final by appeal or *expiration of the time for appeal* or when ordered by the court that entered the judgment for good cause shown.

28 U.S.C. § 1963 (emphasis added). The registration of the judgment is "a 'ministerial act' in terms of the actual mechanical process of registering." *Kane Carribean, Inc. v. Countryside Dev., Inc.*, 2016 WL 492802, at \*2 (D.V.I. Feb. 8, 2016) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* 2787 (3d ed.)); *see also Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 128 F. Supp. 697, 699 (D. Haw. 1955) ("Registration is purely a ministerial act in the enforcement of a foreign judgment. It confers upon this court no power to alter the judgment itself."). "Once registered, the judgment has the same effect as a judgment of the court in which it is registered and may be enforced in the same manner as a judgment of the registration court." *Kane Carribean*, 2016 WL 492802 at \*2; *see also On Track Transp., Inc. v. Lakeside Warehouse & Trucking, Inc.*, 245 F.R.D. 213, 220 (E.D. Pa. 2007) ("An express reason for Congress's enacting § 1963 was 'to spare creditors and debtors alike both the additional costs and harassment of further litigation ....'" (internal citations omitted)).[2]

---

[2] Section 1963 does not prevent a judgment creditor from filing an independent action to enforce a judgment. *Associated Bus. Tel. Sys. Corp. v. Greater Capital Corp.*, 128 F.R.D. 63, 66-67 (D.N.J. 1989); *see also Juneau Spruce*, 128 F. Supp. at 700 ("The judgment creditor can still sue upon the [rendering court's] judgment in this court in an independent action, as well as register it, but can collect but once of course.").

Similarly, title 5, section 553 of the Virgin Islands Code sets out the procedure a party must follow to request the recognition of a foreign judgment in the Superior Court of the Virgin Islands:

> A copy of any foreign judgment authenticated in accordance with an act of Congress or the statutes of the United States Virgin Islands may be filed in the Office of the Clerk of the Superior Court. The Clerk shall treat the foreign judgment in the same manner as a judgment of the Superior Court of the Virgin Islands. A judgment so filed shall have the same effect and shall be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the Superior Court of the Virgin Islands and may be enforced or satisfied in like manner.

5 V.I.C. § 553. Thus, the procedure for recognizing a foreign judgment under Virgin Islands law does not *require* the filing of a complaint. *See id.* However, as under federal law, a judgment creditor retains the ability to "bring an action to enforce his judgment…." *See* 5 V.I.C. § 557 ("The

**2. Rule 37 Sanctions**

Federal Rule of Civil Procedure 37(d) provides that a court may order sanctions if "a party ... fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). The Rules provide that a court may, but need not, award sanctions. The Third Circuit Court of Appeals has interpreted this to mean that a district court has broad discretion in determining whether sanctions are warranted under the Rules. *See* Fed. R. Civ. P. 30, 37; *Bowers v. Nat'l Coll. Athl. Ass'n,* 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court.").

### III.  DISCUSSION

Defendants raise several issues in their Appeal. In addition to challenging the Magistrate Judge's discovery ruling, they also attack both the registration of the Maryland judgment with this Court as well as the underlying merits of the Maryland judgment.

**A.  Registration and Enforceability of the Maryland Judgment**

Here, Plaintiff filed a "Clerk's Certification Of A Judgment To Be Registered In Another District" (Dkt. No. 1-1) with this Court and attached a *certified* copy of the rendering court's judgment. (Dkt. No. 1-2). This filing constituted a registration of the Maryland federal judgment in this Court, pursuant to 28 U.S.C. § 1963. So filed, the Maryland district court judgment has the same effect and can be enforced in the same manner, as a judgment of this Court. *See* 28 U.S.C. 1963 ("A judgment so registered shall have the same effect as a judgment of the district court where registered and may be enforced in like manner."); *Crystallex Int'l v. Bolivarian Republic*,

---

right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this subchapter remains unimpaired.").

932 F.2d 126, 136 (3d Cir. 2019) (stating the same); *see also Consol. Properties, Inc. v. Sherwin-Williams Co.*, 2018 WL 4610622, at \*6 (D.V.I. Sept. 25, 2018) ("A judgment for damages entered in any district court may be registered in any other district under 28 U.S.C.S. § 1963.").[3]

A review of the docket in the Maryland case reflects the extent of the litigation of the underlying claims that occurred in the rendering court prior to the filing of this case. The Maryland district court granted summary judgment in favor of Plaintiff against the individual defendants. Then, the Maryland court granted Plaintiff a default judgment against Defendant Special Spaces, Inc, before granting a "Final Order of Judgment" against all Defendants. Defendants subsequently filed a motion to set aside the judgment, and the Maryland court denied Defendants' motion.

Following litigation in the Maryland district court, Defendants did not appeal that court's rulings. Although Defendants argue at great length in this Court that they were denied due process in the underlying arbitration, the rendering court already addressed that issue in the context of both Plaintiff's Motion for Summary Judgment and Defendants' Motion to Set Aside the Judgment. If Defendants believe that the rendering court erred in its judgment, the proper course of action would have been to file an appeal. However, Defendants chose not to do so. *See Federated Dep't. Stores*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

---

[3] Defendants cite to *Kettle Creek Assocs. v. Bonanno*, 1991 WL 11818250, at \*2 (Terr. V.I. Jan. 16, 1991) in support of their contention that Virgin Islands law will not honor a foreign judgment unless a new, local action is initiated on the judgment in a Virgin Islands court. (Dkt. No. 19 at 2; Dkt. No. 21 at 1-3). Although Virgin Islands law is not controlling here, it is worthy of note that *Kettle Creek Assocs.* has since been superseded by the Uniform Enforcement of Foreign Judgments Act, which was adopted by the Virgin Islands Legislature in 1992, and which provides for the enforcement of a foreign judgment without the filing of a new lawsuit. *See* V.I.C. § 553 ("The Clerk shall treat the foreign judgment in the same manner as a judgment of the Superior Court of the Virgin Islands.").

In sum, Defendants had full opportunity to raise their claims before the rendering court, and thereafter chose not to appeal the rendering court's decision. Defendants cannot now seek to make an end run around the process by lodging a collateral attack on the judgment of the rendering court. *See In re Universal Display & Sign Co.*, 541 F.2d 142, 144 (3d Cir. 1976) (preventing defendants from mounting collateral attack upon default judgment issued in California court, where "there was an opportunity to adjudicate all jurisdictional objections in the California case, in which the defendants appeared"); *see also Indian Head Nat. Bank of Nashua v. Brunelle*, 689 F.2d 245, 250 (1st Cir. 1982) (reversing New Hampshire federal district court's decision granting motion for relief from default judgment that had been registered as foreign judgment from Pennsylvania federal district court, where defendant did not appeal Pennsylvania judgment); *Winfield Associates, Inc. v. W.L. Stonecipher*, 429 F.2d 1087, 1090-91 (10th Cir. 1970) (affirming Kansas federal district court's denial of defendant's motion to vacate Illinois federal district court judgment that had been registered as foreign judgment, where defendant did not directly appeal from default judgment nor from denial of motion to vacate in Illinois proceedings). Accordingly, the Court will reject Defendants' attempt to lodge a collateral attack against the Maryland court's judgment by relitigating the merits of the issues underlying that judgment. In view of the Court's ruling, the Court will also deny Defendants' request for a due process hearing.

## B.  Sanctions

Plaintiff seeks sanctions for Defendants' failure to proceed with the noticed depositions. The Court agrees that sanctions are warranted under the circumstances here.

In *Goodwin v. City of Boston,* 118 F.R.D. 297 (D. Mass. 1988), a Massachusetts federal district court was faced with a situation similar to that in the instant matter. The court there stated:

> The filing of a motion to quash or a *motion for protective order* does not automatically operate to stay a deposition or other discovery. When it appears that

11

> a Court is not going to be able to decide a motion to quash or a motion for protective order before the date set for a deposition, counsel for the movant should contact counsel for the party noticing the deposition and attempt to reach an agreement staying the deposition until after the court acts on the motion to quash and/or the motion for a protective order. If agreement cannot be reached, it is incumbent on counsel for the movant to file a motion to stay the deposition until the court acts on the motion to quash and/or for a protective order *and* to alert the clerk to the need for immediate action on the motion to stay.

*Id.* at 298 (emphasis added); *see also Barnes v. Madison*, 79 F. App'x 691, 707 (5th Cir. 2003) ("[T]he mere act of filing a motion for protective order does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance."); *Hepperle v. Johnston,* 590 F.2d 609, 613 (5th Cir. 1979) ("The court's inaction on appellant's motion [for a protective order] to postpone the taking of his deposition … did not relieve him of the duty to appear for his deposition); *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 2008 WL 4642191, at *5 (D.V.I. Oct. 15, 2008) (denying defendant's request for sanction of dismissal, but noting that "[i]n the absence of a protective order, [plaintiff] was obligated to attend the deposition . . . ."); *Sutherland v. Mesa Air Group, Inc.,* 2003 WL 21402549, at *5 n.10 (S.D. Fla. June 6, 2003) ("[T]he filing of a motion for a protective order alone would still not have relieved defense counsel of his obligation to attend the depositions; only when the district court grants the motion does the obligation to comply with a notice of deposition dissipate.").

Shortly before the depositions at issue here were to take place, Defendants appealed the Magistrate Judge's ruling and filed a motion for a protective order, but did not seek and obtain a stay of the depositions pending a ruling by the Court. By relying on their 39-minute-old appeal of the Magistrate Judge's Order instead of a stay by the Court, and choosing to walk out of the deposition—or not appear at all—instead of adopting the suggestion presented by Plaintiff's counsel to contact the Magistrate Judge, Defendants and their counsel acted at their peril.

Judge Miller's Order denying the motion to quash the notices of depositions did not bring the case—nor any of the pending deadlines or scheduled discovery—to a halt. Judge Miller's Order—even if Defendants disagreed with it—did not obviate the need for their continued compliance with the pending depositions, in the absence of a stay or protective order. Nor did Defendants' motion for a protective order have the effect of staying the depositions. Simply stated, in the absence of a stay entered by the Court, Defendants were not relieved of their obligation to proceed with the depositions. Thus, the Court finds that Defendants failed to comply with their discovery obligation without just cause.

The Court further finds that sanctions are appropriate for Defendants' flagrant disregard of well-established legal principles regarding the need for a court-ordered stay under the circumstances here. While the Court concludes that it would be too severe a sanction to deem it established that Defendants do not have sufficient personal property to satisfy the judgment, the Court nonetheless finds that Plaintiff should be awarded reasonable attorneys' fees and costs associated with Defendants' unjustified failure to proceed with the depositions. Plaintiff will be required to submit to the Court an application for such attorneys' fees and costs for a determination of an appropriate award by the Court.

## IV.    CONCLUSION

Based on the foregoing, the Court will affirm the Magistrate Judge's ruling and deny "Defendants' Appeal From Magistrate Order[,] Motion For A Protective Order[,] And Request For Due Process Hearing" ("Appeal") (Dkt. No. 19). The Court will also grant in part and deny in part Plaintiff's "Motion For Discovery Sanction For Failure To Attend Depositions" (Dkt. No. 22). Specifically, the Court will grant the latter Motion to the extent that Plaintiff will be awarded reasonable attorneys' fees and costs resulting from Defendants' failure to proceed with the

depositions. The award will be determined following an application by Plaintiff and associated

briefing by the parties. An appropriate Order accompanies this Memorandum Opinion.

Date:   June 3, 2020                              _____/s/_____
                                                 WILMA A. LEWIS
                                                 Chief Judge